T.C. Memo. 1999-49

UNITED STATES TAX COURT

FOREST R. PRESTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19597-97.                    Filed February 23, 1999.

<u>Robert R. Lomax</u>, for petitioner.

<u>Eric B. Jorgensen</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  The parties submitted this case to the Court
without trial.  See Rule 122.  Petitioner petitioned the Court to
redetermine deficiencies in his 1992, 1993, and 1994 Federal
income tax and an accuracy-related penalty for 1994 under section
6662(a).  Following concessions, the only issue left to decide is

whether petitioner may deduct $47,482, $40,089, and $24,340 of alimony[1] for the respective years. We hold that his alimony deductions for the respective years are $1,878, $5,014, and zero. Unless otherwise stated, section references are to the Internal Revenue Code in effect for the subject years. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

## Background

All facts were either stipulated or found by the Court from exhibits accompanying the stipulation of facts. The stipulations of fact and accompanying exhibits are incorporated herein by this reference. Petitioner is a cash method taxpayer who resided in Hamilton, Georgia, when he petitioned the Court.

Petitioner claimed alimony deductions of $60,102, $34,946, and $24,202 on his 1992, 1993, and 1994 Federal income tax returns, respectively. Respondent disallowed these deductions, determining that the payments were not alimony. Petitioner concedes that some of the reported amounts did not constitute alimony. Petitioner argues that his alimony deductions for the respective years are $47,482, $40,089, and $24,340.

Petitioner married Dianne Sowell (Ms. Sowell) in 1974, and they had two children (collectively, the children) during their marriage. The older child, Ashley Denise Preston (Ashley), was born October 19, 1976. The younger child, Martin Barron Sowell Preston (Barron), was born October 3, 1984. For most of 1991,

_____

[1] We use the term "alimony" to include "separate maintenance payments".

petitioner lived with his family in Columbus, Georgia, in a house (the Columbus house) that he owned jointly with Ms. Sowell. Petitioner moved out of the Columbus house in December 1991, and he moved into a cabin that he owned in Harris County, Georgia.

In March 1992, Ms. Sowell petitioned the Superior Court of Muscogee County, Georgia, for a divorce from petitioner. One month later, on April 3, 1992, the superior court issued a temporary order nunc pro tunc to March 19, 1992. The temporary order stated:

1.

Plaintiff [Ms. Sowell] shall have the temporary custody of the two (2) minor children of the parties, and the Defendant [petitioner] shall have the right to visit said children and have said children visit with him at all reasonable times and places.

2.

Plaintiff shall have the temporary exclusive use of the [Columbus] house and premises and all household furniture and furnishings located therein * * * and the Cadillac automobile in her possession. The Defendant shall have the temporary exclusive use of all marital property now in his possession and the property located in Harris County, Georgia known as the house or cabin in the backwater.

* * * * * * *

4.

Defendant shall pay for the support of Plaintiff and the two (2) minor children of the parties and the following household and family expenses until further Order of the Court:

(a) The mortgage payments, ad valorem taxes and insurance on the * * * [Columbus house] * * *;

(b) All utility expenses at the * * * [Columbus house], including electricity, water, garbage and

sewer, telephone, gas, pest control, cable television and lawn care;

(c) Wife's automobile expenses, including gasoline and oil, repairs, automobile tags, licenses and insurance;

(d) The medical and dental expenses of Wife and the children and prescription drug expenses;

(e) The children's school tuition, supplies and activities;

(f) The cost of clothing for Wife and the children * * *.

In addition to making the payments above enumerated, Defendant shall pay to Plaintiff the sum of ONE THOUSAND DOLLARS ($1,000) per month, commencing April 1, 1992, with a payment of FIVE HUNDRED DOLLARS ($500.00), and the payment of an additional FIVE HUNDRED DOLLARS ($500.00) on the 15th of April, 1992, and continuing with like payments during each calendar month thereafter until further Order of the Court; with the provision, however, that Defendant may at his option pay the monthly sum on the 1st day of each calendar month rather than in two (2) installments; and Defendant shall pay to Plaintiff immediately an amount so that the total sum given to her for support of herself and the children during the month of March, 1992 will equal the sum of ONE THOUSAND DOLLARS ($1,000).

On June 3, 1993, the superior court held petitioner in contempt of the temporary order because he had failed to pay certain bills covered by the order. The court ordered him to pay these bills and to pay $350 of attorney's fees at the rate of $50 per month commencing with June 1993.

On September 4, 1993, the superior court entered a final judgment and decree (the final decree) granting Ms. Sowell a divorce from petitioner. The final decree provided in relevant part:

FINAL JUDGMENT AND DECREE

* * * it is the judgement of the Court that a total divorce be granted. * * * Each party is awarded their personal property and other property which is in their possession.

1.

The Plaintiff is awarded permanent custody of the two minor children of the parties * * *

* * * * * * *

4.

Defendant shall pay to the Plaintiff the sum of $800.00 per month per child as child support and Defendant shall commence said payments of child support on August 1, 1993, with a payment of $800.00 and an equal payment of $800.00 on August 15, 1993 and said payments shall continue on the 1st and 15th of each calendar month until each child attains the age of 18, marries, dies, becomes fully self-supportive or otherwise emancipated, whichever event shall first occur the child support shall terminate. * * *

* * * * * * *

6.

The Plaintiff is awarded the * * * [Columbus house], and the Plaintiff is to make payments on the indebtedness secured by said real property and shall hold the Defendant harmless therefrom for payments due on said property.

7.

The Defendant shall pay to the Plaintiff a lump sum award of alimony total of $180,000.00 with $120,000.00 payable at $1,000.00 per month for ten (10) years, beginning on August 1, 1993, and then in five (5) years, due on the 14th day of July, 1998, the Defendant shall pay to the Plaintiff a lump sum of $10,000.00 and then in ten (10) years, due on the 14th day of July, 2003, the Defendant shall pay to the Plaintiff $50,000.00. * * *

* * * * * * *

10.

The Defendant is ordered to pay and be responsible for tuition at Brookstone School for the minor child, Barron, for 1993-1994 school year.

11.

The Defendant shall pay the insurance for the minor child, Ashley's, car until she reaches 18 years of age.

\*     \*     \*     \*     \*     \*     \*

13.

The Defendant is ordered to buy the Plaintiff a car not to exceed $17,000.00 within the next ninety (90) days.  Defendant may finance said purchase and he shall be responsible and make the payments as due.

14.

The Defendant shall pay the sum of $5,000.00 as attorney fees to be divided among the law firms HARP & JOHNSON, P.C. and GROGAN, JONES, RUMER & GUNBY, P.C. for their legal representation of Plaintiff.  Said sum shall be payable at $200.00 per month for 25 months beginning on August 1, 1993 until said sum is paid in full.

\*     \*     \*     \*     \*     \*     \*

16.

The Defendant shall maintain and pay the premiums for major health, hospitalization and dental insurance for the minor children for as long as he is obligated to pay child support.  The Defendant shall be responsible for all medical expenses which are not covered by insurance for the benefit of the minor children. \* \* \*

Pursuant to the temporary order, petitioner paid Ms. Sowell monthly payments totaling $10,000 in 1992 and $7,000 in 1993. Pursuant to the final decree, petitioner paid Ms. Sowell monthly payments totaling $5,000 in 1993 and $12,000 in 1994.  Petitioner

claims an alimony deduction for the amount of these monthly payments, and for other amounts that he paid or incurred during the subject years for the benefit of Ms. Sowell and/or the children. Each amount that petitioner paid or incurred during the subject years, and for which he claims an alimony deduction, is listed below by year, payee, amount, and purpose.[2] These amounts are as follows:

1992

| Payee | Amount | Purpose |
|---|---|---|
| Ms. Sowell | $10,000 | Monthly payments |
| Ms. Sowell | 2,232 | Clothes for children |
| Pacelli High | 1,109 | Ashley's tuition |
| Southern Bell | 783 | Telephone--Columbus house |
| Sears | 375 | Pest control--Columbus house |
| Ms. Sowell | 212 | Clothes for Ms. Sowell |
| Ms. Sowell | 350 | Barron's school picture |
| CB&T | 1,525 | Barron's tuition |
| N. C. Pharmacy | 447 | Drug bill |
| Galaxie | 210 | Satellite T.V.--Columbus house |
| Dr. Hudson | 406 | Children's physician |
| Telecable | 514 | Cable T.V.--Columbus House |
| Un. Cities Gas | 470 | Gas Heat--Columbus House |
| Dr. Allison | 443 | Ms. Sowell's dentist |
| Brookstone School | 2,373 | Barron's tuition/related exp. |
| Dr. Helms | 665 | Ms. Sowell's dentist |
| Associates | 533 | Satellite T.V.--Columbus house |
| Georgia Power | 2,125 | Electric bill--Columbus house |
| Columbus Water | 524 | Water bill--Columbus house |
| C. Wilson | 86 | Children's piano activities |
| Columbus Ledger | 116 | Newspaper--Columbus house |
| Ms. Sowell | 166 | Activities for Barron |
| R. Waters | 385 | Tree removal--Columbus house |
| Grasshopper | 685 | Lawn care--Columbus house |
| Ms. Sowell | 666 | Miscellaneous expenses |
| Bob's Pool | 1,408 | Pool liner--Columbus house |

---

[2] Petitioner paid all these amounts, but for the $2,204 and $566 amounts shown with Preston Oil for 1992 and 1993, respectively. Ms. Sowell charged the $2,204 and $566 amounts to petitioner's account at Preston Oil. Preston Oil is a corporation owned and operated by petitioner.

| Payee | Amount | Purpose |
|---|---|---|
| J.P Lanier Co. | 548 | Homeowner ins.--Columbus house |
| Ms. Sowell | 136 | Children's dental bill |
| Ms. Sowell | 130 | Ms. Sowell's medical bill |
| Ms. Sowell | 200 | Barron's birthday party |
| CB&T | 10,000 | Buy automobile for Ashley |
| D.J. Ins. | 428 | Insurance--Ms. Sowell's car |
| D.J. Ins. | 340 | Insurance--Ashley's car |
| Ms. Sowell | 468 | Misc. activities of children |
| World Book | 200 | Encyclopedia for children |
| S. Chemical | 100 | Pool chemicals--Columbus house |
| Preston Oil | 2,204 | Ms. Sowell's car expenses |
| Preston Oil | 187 | Ashley's car expenses |
| GAO Ins. | 3,133 | Ms. Sowell/children health ins |
| Ms. Sowell | 600 | Children's Christmas |
| | 47,482 | |

1993

| Payee | Amount | Purpose |
|---|---|---|
| Ms. Sowell | $7,000 | Monthly payments |
| Harp & Johnson | 1,150 | Legal fees |
| Ms. Sowell | 5,000 | Monthly payments |
| Barnett Bank | 669 | Buy automobile for Diane |
| Lee Grogan | 400 | Diane's attorney fees |
| Hirsch, et al. | 900 | Children's clothing allowance |
| Brookstone | 4,838 | Barron's tuition |
| Ms. Sowell | 22 | Reimbursement |
| Southern Bell | 1,191 | Telephone--Columbus house |
| Sears | 510 | Pest control--Columbus house |
| Ms. Sowell | 95 | Ms. Sowell's bills |
| Ms. Sowell | 148 | Children's activities |
| Ms. Sowell | 46 | Children's activities |
| Un. Cities Gas | 788 | Gas Heat--Columbus House |
| Associates | 599 | Satellite T.V.--Columbus house |
| Georgia Power | 2,492 | Electric bill--Columbus house |
| Columbus Water | 478 | Water bill--Columbus house |
| N. C. Pharmacy | 209 | Drug bill--Ms. Sowell |
| N. C. Pharmacy | 142 | Drug bill |
| Dr. Allison | 746 | Ms. Sowell's dentist |
| Telecable | 403 | Cable T.V.--Columbus House |
| S. Chemical | 319 | Pool Chemicals--Columbus house |
| Dr. Aranas | 65 | Children's doctor bill |
| Dr. Helms | 1,312 | Ms. Sowell's dentist |
| Brookstone | 423 | Barron's school related exp. |
| Dr. Thomason | 139 | Children's dentist |
| Gayfers | 54 | Clothes for Barron |
| Dr. Phelts | 40 | Ashley's doctor bill |
| Columbus Ledger | 70 | Newspaper--Columbus house |
| Dr. Hutchins | 378 | Children's eye doctor bill |
| World Book | 857 | Encyclopedia for children |

```
Telecom               193  Telephone--Columbus house
Josten's              347  Ring for Ashley
Ms. Sowell            116  Tire for Ashley's car
Grasshopper           630  Lawn care--Columbus house
Pastoral Inst.        290  Counseling for Ashley
Prem Collections      296  Ashley's medical bill
Olan Mills             22  Children's pictures
Ms. Sowell             28  School supplies
Ms. Sowell             11  Children's activities
Ms. Sowell             30  Ms. Sowell's automobile bill
D.J. Ins.              60  Insurance--Columbus house
Dr. Chhokar           454  Ms. Sowell's medical bill
Dr. Hudson            164  Children's doctor bill
Auto Owners Ins.      585  Insurance on Ms. Sowell's car
Fuller Auto           437  Ms. Sowell's car repair
St. Fran. Hosp.       110  Ashley's medical bill
St. Fran. Hosp.        30  Ms. Sowell's medical bill
Radiology               9  Ashley's doctor bill
Prof. College         464  Ms. Sowell's medical bill
Path Em Re             86  Ms. Sowell's bill
Columbus College       75  Children's camp and karate
Muscogee County       701  Tax on Ashley's car
Jeane Teaster          60  Ashley's tutor bill
Ms. Sowell            468  Misc. expenses of children
GAO Ins.            2,222  Ms. Sowell/children health ins.
Preston Oil           566  Ms. Sowell's car expenses
Preston Oil           152  Ashley's car expenses
                   40,089
```

1994

| Payee | Amount | Purpose |
| --- | --- | --- |
| Dr. Helms | $1,647 | Ms. Sowell's dentist |
| Ms. Sowell | 12,000 | Monthly payments |
| Barnett Bank | 2,692 | Purchase of car for Ms. Sowell |
| Harp & Johnson | 1,100 | Ms. Sowell's legal fees |
| Lee Grogan | 1,100 | Ms. Sowell's legal fees |
| Lane's | 128 | Portrait of Barron |
| South Trust Bank | 755 | Purchase of car for Ms. Sowell |
| Brookstone | 2,588 | Barron's tuition |
| Gen. Amer. Ins. | 2,048 | Pay loan on Ms. Sowell's insurance policy |
| Auto Owner Ins. | 282 | Ashley's automobile insurance |
|  | 24,340 |  |

## Discussion

We must determine whether petitioner may deduct any of the disputed payments as alimony.  Respondent determined that he could not.  Petitioner bears the burden of proving respondent's determination wrong.  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

An individual may generally deduct a payment made during the taxable year to a spouse[3] to the extent it is alimony that is includable in the spouse's gross income.  See sec. 215(a) and (b).  A payment is alimony that is includable in a spouse's gross income when:  (1) The payment is made in cash, (2) the payment is received by (or on behalf of) the spouse under a divorce or separation instrument, (3) the divorce or separation instrument does not provide that the payment is not reportable as alimony, (4) the spouses reside in separate households at the time the payment is made, (5) the spouses do not file a joint return, and (6) the liability for payment does not continue for any period after the spouse's death.  See sec. 71 (b)(1), (e).  Each of these requirements must be met before a payor may deduct a payment as alimony.  We concern ourselves only with the three requirements in dispute.

First, the need for a cash payment requires that alimony be paid in cash or a cash equivalent.  A check or money order that is payable on demand is a cash equivalent.  A debt instrument

---

[3] We use the term "spouse" to refer to a present or former spouse.

that is issued or transferred is not.  See sec. 71(b)(1); sec. 1.71-1T(b), Q&A-5, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984).

Second, only those payments that are received by or on behalf of a spouse pursuant to a divorce or separation instrument may qualify as alimony.  Amounts that are paid as child support do not qualify as alimony.  See sec. 71(c)(1).  Payments made under a divorce or separation instrument are considered child support to the extent that they will be reduced upon the happening of a contingency related to a child, e.g., the child's reaching a specified age.  See sec. 71(c)(2).

Third, alimony does not include amounts that must continue to be paid after the payee's death.  See sec. 71(b)(1)(D). Whether an obligation to make a payment ceases upon the payee's death may be determined by the terms of the applicable documents. If the documents are silent on this matter, the answer lies in State law.  See Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987); see also Cunningham v. Commissioner, T.C. Memo. 1994-474.

Turning to the instant facts, we find that few of the disputed payments qualify as alimony.  Most of these payments are either payments of child support or payments for which petitioner would remain liable if Ms. Sowell were to die.[4]  As to the latter category of payments, nothing in the applicable documents

---

[4] Some of these amounts also were not paid pursuant to the temporary order or final decree.

conditions these payments on the fact that Ms. Sowell is living. Nor can we find such a condition in applicable State (Georgia) law. Under Georgia law, alimony is either periodic or lump sum, see Winokur v. Winokur, 365 S.E.2d 94, 95 (Ga. 1988), and the mere fact that alimony is payable in installments does not mean it is periodic, see Stone v. Stone, 330 S.E.2d 887, 889 (Ga. 1985). Lump-sum alimony is payable in installments if the applicable documents "state the exact amount of each payment and the exact number of payments to be made without other limitations, conditions or statements of intent". See Winokur v. Winokur, supra at 96; see also Stone v. Stone, supra at 889. An obligation to pay lump-sum alimony in installments does not terminate upon the payee's death. See Winokur v. Winokur, supra at 95; see also Human v. Commissioner, T.C. Memo. 1998-106.

As to the non-child-support amounts which would cease upon Ms. Sowell's death--namely, $212 spent in 1992 for Ms. Sowell's clothes, $443 spent in 1992 for Ms. Sowell's dentist, $665 spent in 1992 for Ms. Sowell's dentist, $130 spent in 1992 for Ms. Sowell's medical bill, $428 spent in 1992 for Ms. Sowell's car insurance, $2,204 spent in 1992 for Ms. Sowell's car expenses, $95 spent in 1993 for Ms. Sowell's bills, $209 spent in 1993 for Ms. Sowell's drug bill, $746 spent in 1993 for Ms. Sowell's dentist, $1,312 spent in 1993 for Ms. Sowell's dentist, $30 spent in 1993 for Ms. Sowell's automobile, $454 spent in 1993 for Ms. Sowell's medical bill, $585 spent in 1993 for Ms. Sowell's car insurance, $437 spent in 1993 for Ms. Sowell's car repair, $30

spent in 1993 for Ms. Sowell's medical bill, $464 spent in 1993 for Ms. Sowell's medical bill, $86 spent in 1993 for Ms. Sowell's bill, $566 spent in 1993 for Ms. Sowell's car expense, and $1,647 spent in 1994 for Ms. Sowell's dentist--we hold that these amounts, but for the $2,204, $566 and $1,647 amounts, are deductible as alimony.[5] The deductible amounts, which aggregate $1,878 and $5,014 for 1992 and 1993, respectively, were paid to (or for the benefit of) Ms. Sowell's maintenance, and, naturally, petitioner's obligation to make these payments would have ceased upon Ms. Sowell's death.[6] The $2,204 and $566 amounts are not deductible because petitioner did not pay these amounts in cash, as is required by section 71(b)(1). Petitioner "paid" these amounts to Ms. Sowell by agreeing to pay these charges in the future. The $1,647 amount is not deductible because we are unable to find that it was paid pursuant to a divorce or

---

[5] There are other amounts--$447 spent in 1992 for a drug bill, $666 spent in 1992 for miscellaneous expenses, $3,133 spent in 1992 for health insurance for Ms. Sowell and the children, $22 spent in 1993 for reimbursement, $142 spent in 1993 for a drug bill, $2,222 spent in 1993 for health insurance for Ms. Sowell and the children, and $2,048 spent in 1994 to pay a loan on Ms. Sowell's insurance policy--for which we are unable to determine what, if any, amount was paid with respect to Ms. Sowell. (We also note that the $2,048 amount was not required by either the temporary order or the divorce decree.) As petitioner bears the burden of proof, we must sustain respondent's disallowance of these amounts.

[6] Whereas petitioner's payments for Ms. Sowell's car expenses are deductible as alimony, petitioner's payments in satisfaction of his obligation to buy her a car are not. As we read the final decree, petitioner's obligation to buy the car would not have terminated upon Ms. Sowell's death. If Ms. Sowell had died before petitioner had bought her the car, petitioner would have had to buy the car for the benefit of her estate.

separation instrument. Although the temporary order stated that petitioner must pay Ms. Sowell's medical and dental expenses, the final decree, which did not contain a similar provision, replaced the temporary order as of September 4, 1993.

We hold that petitioner's alimony deductions in the respective years are $1,878, $5,014, and zero. In so holding, we have carefully considered all remaining arguments made by the parties for a result contrary to that expressed herein, and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.